In the Matter of RAPHAEL WILCOX, Petitioner.

Supreme Court, Monroe County, December 15, 1934.

*Scully & O'Brien,* for the petitioner.

*Ray F. Fowler, District Attorney* [*Basil E. Moore, Assistant District Attorney*], opposed.

KNAPP, J. This 's a motion made by Raphael Wilcox asking for an order expunging from the records of the Monroe county clerk and the records of this court the report of the grand jury of the county of Monroe dated October 19, 1934.

This report relates to irregularities in the conduct of a primary last September in the various districts of the fourth ward in the city of Rochester. The complete report reads as follows:

*" October* 19, 1934.

*" To the Supreme Court of the State of New York:*

" The September, 1934, Grand Jury of the State of New York and County of Monroe desire to make the following presentment to this honorable Court:

" During our term of service it was called to our attention that possible irregularities in the conduct of the primary of September last may have existed in the various districts of the 4th Ward in the city of Rochester. Because of this fact we felt it our duty under the statute to make an investigation of such matters. We have pursued such investigation for almost the entire time of our second period of service, and have examined approximately 175 witnesses, including voters participating in said primary election, as well as the Commissioner of Elections, handwriting experts and others. As a result of this investigation, we have found to exist inexcusable and gross irregularities on the part of the Inspectors of Election in each district of the 4th Ward, and extreme carelessness and indifference on the part of many of the voters themselves, by reason of which it is possible that deliberate frauds against the election franchise may have taken place. We have found that no attempt was made on the part of the various Inspectors to conduct such election in accordance with the mandatory and plain provisions of the election law designed for the protection and integrity of the ballot. We have found repeated instances of situations where the Inspectors would permit the writing in by others than the voter the name of a certain candidate under circumstances absolutely contrary to law, and with absolute indifference to the law. We have moreover found in many instances and throughout the Ward that the cross mark before the name of a candidate has been erased and a cross placed before the name of an opposing candidate or the name of another party candidate written in. We have found that such written names appear to be in the handwriting of a single individual in each district of the Ward, indicating not only a deliberate fraud but a willingness on the part of the Inspectors to ignore and permit it. In our opinion we lack sufficient evidence to warrant the indictment of the various offenders and we have been largely hampered in securing sufficient evidence by reason of the obvious reluctance of witnesses to testify frankly, freely and truthfully in connection therewith. In various other instances it appears that the entire list of candidates of a party was not voted by the person to whom

the ballot was delivered but the same must have been completed by someone after the ballot was delivered to the Inspector.

" Not only have we observed a consistent reluctance but a similarity of phraseology on the part of most of the witnesses in answer to questions directed to them, plainly indicating to us that some individual or individuals, before the appearance of these witnesses, had carefully coached them as to the nature of their answers.

" We call the attention of this Court also to the fact that various Inspectors of Election in the said Ward were requested to testify before this Body and that in all instances these public officials who should be ready and willing at all times to give an account of their official acts refused to sign the necessary waiver which would make it possible to hold them responsible under the law if guilty of crimes against the franchise. At all times we have observed not only a general indifference on the part of these officials but according to the testimony before us a gross incompetency. The continuance of these individuals as Election Inspectors would amount to a fraud upon the voting public of this county including well intentioned voters of the 4th ward. We, therefore, recommend that Mr. Thomas E. Broderick and Mr. William J. Hunt, Chairmen respectively of the Republican and Democratic parties request the Commissioner of Elections forthwith and under the provisions of the election law to remove the present inspectors of the entire five districts of the said 4th Ward in the city of Rochester, and appoint in their places to act at the coming election and at all future primary and other elections, experienced and reliable male Inspectors, not residents of the said Ward, to represent the two said Parties, and that the same be continued until it is apparent to the responsible authorities that the present deplorable conditions have been corrected.

" We further recommend that the District Attorney of this County, request the assistance of the State Police at the various polling places for the protection of these Inspectors, for the apprehension of fraudulent voters as well as for the protection of those who desire to vote properly and without unlawful interference on the part of anyone.

" This Grand Jury expresses its regret that by reason of the peculiar existing conditions it was not possible to obtain sufficient evidence under the law to establish individual crimes beyond a reasonable doubt and vote indictments accordingly, placing the culpability where it really belongs.

" In the course of our investigation we discovered that in instances ballots were cast for and in the name of duly enrolled voters who did not appear at the polls on said day to vote, the identity of such persons so fraudulently depositing said ballots at the present time being unknown to this Grand Jury.

" This Grand Jury further wishes to commend the Commissioner of Elections, the District Attorney and his Assistants for their sustained and determined efforts to present the existing facts before this Grand Jury.

" SEPTEMBER, 1934, GRAND JURY

" by SEBASTIAN A. DURBAN,

" WILLIAM R. BEESLEY,

" CHAS. J. ASHTON,

" *The duly appointed Committee.*"

It will be observed from a careful reading of such report that the grand jury states that they have found inexcusable and gross irregularities on the part of the inspectors of election in each district of the fourth ward and extreme carelessness and indifference on the part of many of the voters themselves.

This petitioner, at the time of the commencement of this proceeding and all of the times mentioned in such report, was employed as an election inspector in the first district of the fourth ward of the city of Rochester in the county of Monroe and State of New York. His petition sets forth that the said report reflects upon his character and his integrity and holds him up to public ridicule and scorn among his friends and other citizens in the city in which he lives. This is claimed to be so although the report does not distinguish him by name and he is only mentioned as one of a class.

The nature of this proceeding brings squarely before the court the question as to the authority of this grand jury to make the report it did or any of a similar character.

" The institution of the grand jury is of very ancient origin in the history of England; it goes back many centuries. For a long period its powers were not clearly defined; and it would seem, from the accounts of commentators on the laws of that country, that it was at first a body which not only accused, but which also tried public offenders. However this may have been in its origin, it was at the time of the settlement of this country, an informing and accusing tribunal only, without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial." (FIELD, C. J., in *Re Charge to Grand Jury* [1872] 2 Sawy. 667; Fed. Cas. No. 18,255.)

As has been already said, " it had its origin in England, at a time when the conflicts between the power of the government on the one hand, and the rights of the subject on the other, were fierce and unremitting; and it was wrung from the hands of the crown, as the only means by which the subject, appealing to the judgment of his peers, under the immunity of secrecy and of irresponsibility for

their acts, could be rendered secure against oppression. Happily, in our country, no illustration of its value in this respect has been furnished. But it was nevertheless, introduced among us in the same spirit in which it took its rise in the mother country, and as the very language of the constitution shows, was designed to be a means of protection to the citizen against the dangers of a false accusation, or the still greater peril of a sacrifice to public clamor." (Report of Select Committee on Code of Criminal Procedure, March 2, 1855, at p. 125; reported in Code of Criminal Procedure Reports 1855, Hadley, Gates, etc.)

Strange as it may seem, the provisions requiring an indictment in important criminal cases were not included in the first Constitution of this State and the subject was, therefore, left to legislative discretion. The New York Bill of Rights of 1787, section 3, required an indictment in these cases and that provision was incorporated in the subsequent Constitutions of this State, being article 7, section 7, of the Constitution of 1821; article 1, section 6, of the Constitution of 1846, and article 1, section 6, of the Constitution of 1894 of this State. (Lincoln's Constitutional History of New York, vol. 1, p. 102, § 18.)

This is all the more strange when it is recognized that when the colonists came over to America, they brought with them the legal system in use in England at that time. Prosecutions for felonies in England were initiated by grand jury indictments and prosecutions for misdemeanors could be initiated either by indictment or by criminal information. The colonists adopted these English methods of initiating criminal prosecutions and we find in the Fifth Amendment of the United States Constitution that it is provided that no person shall be held to answer for a capital or otherwise infamous crime unless upon the presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger.

This provision in the Federal Constitution applies only to cases in the Federal courts. (Vol. 10, Oregon Law Review, p. 101, " A Survey of the Grand Jury System," by Wayne L. Morse, p. 107.)

The sections of the Code of Criminal Procedure relating to the formation of the grand jury, its powers and duties, are found in title IV, chapter II, commencing with section 223.

Section 252 of the Code of Criminal Procedure relates to the power of the grand jury to inquire into crimes. It reads as follows: " The grand jury has power, and it is their duty, to inquire into all crimes committed or triable in the county, and to present them to the court."

Section 260 of the Code of Criminal Procedure, relating to an inquiry to be made by it as to persons imprisoned on criminal charges and not indicted, the condition of public prisons and the misconduct of public officers, reads as follows: " The grand jury must inquire, (1) Into the case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted; (2) Into the condition and management of the public prisons in the county; and (3) Into the willful and corrupt misconduct in office, of public officers of every description, in the county."

Nowhere in the law that I have been able to find is there a provision authorizing a report to be made to the court by a grand jury upon any matter other than by an indictment. It may be said inferentially as a matter of argument that a direction to inquire presupposes a direction to report, but so far as direct authority is concerned in the Code of Criminal Procedure for the making of such a report it does not exist.

We are concerned here with only the third subdivision of section 260 of the Code of Criminal Procedure, as to whether that authorizes the making of the report in question, its presentation to the court and its filing in the records of the county of Monroe.

The various willful and corrupt acts of misconduct in office of public officers are made crimes by sections 1820 to 1876, inclusive, of the Penal Law. In addition to the specific crimes defined in those sections applicable to public officers, section 1866 of the Penal Law provides as follows: " An officer or other person mentioned in the last section who wilfully disobeys any provision of law regulating his official conduct, in cases other than those specified in that section is guilty of a misdemeanor, punishable by a fine not exceeding one thousand dollars, or imprisonment not exceeding two years, or both."

A careful reading of this section will disclose that it is all inclusive and relates to the violation of any provisions of law relating to his official conduct. Such willful and corrupt misconduct in office of public officers is an indictable offense and does not come within any of the subdivisions of section 56 of the Code of Criminal Procedure (unless subdivisions 13, 14, 30 of such section are to be considered exceptions to the statement already made). It would be very difficult, therefore, to find an offense covered by section 260 of the Criminal Code that could be investigated by the grand jury in which an indictment could not be found if the evidence before the grand jury warranted the finding of such an indictment.

The cases in this State upon the question here involved are not uniform and cannot be reconciled. Only one case exists in the State, which will be hereafter referred to, that carries with it a decision of

an appellate tribunal. The court of last resort has not spoken upon this question.

The respondent cites in support of his contention in this proceeding the case of *Matter of Jones* v. *People* (101 App. Div. 55; appeal dismissed for lack of jurisdiction, 181 N. Y. 389). In this case the grand jury of the county presented a presentment to the court criticising the board of supervisors of the county of Nassau. A motion was made to set aside and quash such presentment. The case was decided by a divided court. JENKS, J., speaking for the majority of the court, said: " I think that if under the guise of a presentment the grand jury simply accuse, thereby compelling the accused to stand mute, where the presentment would warrant indictment so that the accused might answer, the presentment may be expunged, but I do not think that a presentment as a report upon the exercise of inquisitorial powers must be stricken out if it incidentally point out that this or that public official is responsible for omissions or commissions, negligence or defects." In this case there was a vigorous dissent made by one of the justices of that court. WOODWARD, J., in the course of a carefully considered opinion, states the following: " It cannot be that it was ever contemplated that this body, created for the protection of the citizen, was to have the power to set up its own standards of public or private morals, and to arraign citizens at the bar of public opinion, without responsibility for its abuse of that power, and without giving to the citizen the right to a trial upon the accusations." These two quotations illustrate the wide difference existing between these two opinions.

The prevailing opinion in the *Jones* case has received support in an article written by Professor A. M. Kidd, of the School of Jurisprudence of the University of California, entitled " Why Grand Jury's Power is a Menace to Organized Crime," published in September-October, 1934, issue of *The Panel*.

The right of a grand jury to make a report accusing a public officer of misconduct in office or generally criticising public officials has been denied in many cases arising at Special Term. In *Matter of Osborne* (68 Misc. 597), where the grand jury made a report to the court criticising the conduct of the district attorney, and upon a motion having been made to strike such report from the files of the court, the court in the course of its opinion said: " It has become a custom of almost invariable occurrence that the grand jury, at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be reme-

died. So long as they are confined to matters of general interest they are regarded as harmless, even though a waste of time and effort, and after the ephemeral notice of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impunged, and he held to reprobation, without an opportunity to defend or protect his name and reputation." The motion was granted and the report was stricken out and expunged from the records of the court.

In the case of *Matter of Heffernan* (125 N. Y. Supp. 737) an application was made for an order to set aside a presentment made by the Kings county grand jury concerning the official action relating to some public improvements. The learned county judge in his opinion uses this language in referring to the powers of a grand jury: "They are not part of the administrative government of a great municipality. They have the fullest and amplest power to investigate, as it is their solemn and prescribed duty to do, into ' the willful and corrupt misconduct in office, of public officers of every description, in the county.' Finding any such evidence of willful and corrupt misconduct, it would be their clear duty to indict. Then the official could have his day in court, where he would receive either the condemnation which he deserved if his actions have been unlawful, or the vindication that he would desire in case he was blameless." The motion was granted.

*Matter of Woodbury* (155 N. Y. Supp. 851) was a case in which the grand jury of the county of Niagara made a presentment criticising a member of the board of police commissioners of the city of Niagara Falls. A motion was made to expunge this report from the records of the Supreme Court, which was granted.

In *Matter of Gardiner* (31 Misc. 364), a case in which an application was made by the district attorney of the county of New York to have stricken out and expunged from the records certain portions of a presentment made by a grand jury of that county upon the ground that the same were without warrant in law and unsupported by evidence, the court said: "While it may be observed that the court has tolerated rather than sanctioned such presentments of things general, yet the grand jury should never under cover of a presentment present an individual in this manner, for if it have legal evidence of the commission of the crime it should find an indictment against him upon which he could be held to answer, and if it have no such evidence, it ought, in fairness, to be silent.

" The powers of the grand jury extend only to questions of crime. Its functions are not executive, but judicial." The motion was granted.

In *Matter of Crosby* (126 Misc. 250) the grand jury of the county of Niagara made a report to the court reflecting upon the mayor and the police commissioners of the city of Lockport. A motion was made to strike out and expunge the same from the records of the Supreme Court. The motion was granted.

In *People* v. *McCabe* (148 Misc. 330) a motion was made to change the place of trial of a criminal action pending in Nassau county, and the basis of such motion was the presentment made by the grand jury of Nassau county to the court relating to certain conditions in that county. The court in the course of its opinion said: "A presentment is a foul blow. It wins the importance of a judicial document, yet it lacks its principal attributes — the right to answer and to appeal. It accuses but furnishes no forum for a denial. No one knows upon what evidence the findings are based. An indictment may be challenged — even defeated. The presentment is immune. It is like the ' hit and run ' motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed."

In *Matter of Funston* (133 Misc. 620) the grand jury of the county of Schenectady had made a presentment to the Supreme Court reflecting upon conditions in that city and charging that the chief of police was directly responsible for such lawless conditions. A motion was made for an order dismissing and quashing this presentment and to expunge the same from the records of the court. The learned judge at Special Term, reviewing the authorities generally, granted the motion.

As there is a conflict of authorities in this State existing upon this question it might be helpful to observe what the text-book writers and judicial decisions outside of this State say upon this question.

Mr. George J. Edwards, the author of the work entitled " The Grand Jury," in discussing the question here at issue, at page 159 says: " When the grand jury in their presentment thus go beyond their lawful authority, whether they refer to persons by name, title, or by innuendo, or to any particular matter or thing, it becomes a serious question whether or not their presentment should be permitted to stand.

" Clearly in such instance they have exceeded their authority, and in such event their presentment rests upon no legal foundation. There would consequently seem to be no valid reason why a motion to quash or dismiss the presentment, or strike it, or the objectionable part thereof, from the files should not be made. If the grand jurors have exceeded their authority in making such

presentment, it is clearly invalid and illegal and may be subjected to attack either by the attorney for the state or by the person or persons to whom the presentment may relate, in the same manner as any presentment or indictment may be attacked."

Bishop's New Criminal Procedure ([2d ed.], vol. 1, § 137, subd. 2) says: " Sometimes our grand juries make a sort of general presentment of evils and evil things, to call public attention to them, yet not as instructions for any specific indictments. No one could be called to answer to such a presentment."

In 28 Corpus Juris, 799, the rule is stated as follows: " Grand juries sometimes make a sort of general presentment of evils or evil things to call attention to them, yet not as instructions for any specific indictment. It has been held that a grand jury has no power to file with the court a report of this nature, charging no crime, but reflecting on the conduct of specified individuals. And a court may expunge such a report from the records where it appears to have been inadvisedly made, or is merely a guise to accuse a public official of laxity in the enforcement of certain laws."

In " Precedents of Indictments " (1831), written by Daniel Davis, Solicitor General of the State of Massachusetts, at page 11 the author says: " The practice, not uncommon in some parts of the United States, of bringing forward in the form of presentments what are denominated public grievances relative to the official or moral state of the country, is altogether extraofficial, and may be, and has been, adopted and pursued for purposes foreign to, and inconsistent with, the nature of the institution. And perhaps it is not too much to assert that the opportunity has been used and perverted to party purposes, and with an intention to produce an effect upon public measures and the public mind. Whenever this shall be the case it is to be considered in the same light as any other usurpation or abuse of the judicial authority. It may, with the same propriety, be exercised by any other branch of the judicial power, by the court or the traverse jury as well as the grand jury."

In 41 Yale Law Journal, page 687, in an article entitled " The Inquisitorial Functions of Grand Juries," by George H. Dession and Isadore H. Cohen, at pages 704 to 711, the authors state: " Reports censuring particular individuals raise new considerations. Granting that criticism of a public official — for such reports are usually directed at a local official — raises questions of public, or political, interest just as truly as a report concerning a condition, it is questionable whether grand juries may wisely be permitted this opportunity. Partaking in the public eye, as such reports well might, of the sanction and authority associated with grand jury accusation in the form of indictment, they would carry a quite

disproportionate rate. With the decreasingly representative character of grand juries and the increase of other organs for expression of censure of office holders, the public interest factor has been felt to dwindle as against considerations leading to suppression of the reports."

In the case of *Lake* v. *State* (100 Fla. 373; 129 S. 827, 839) the learned court in discussing this same question says: " The grand jury is merely an inquisitorial and accusatorial body, it is not the ultimate fact finder but on the basis of *ex parte* testimony indicts or accuses one of crime. Its finding is not a verdict or judgment and no interest other than as defined by statute will so disqualify a member of the grand jury as to vitiate the indictments returned by it."

In *Matter of Report of Grand Jury* (152 Md. 616; 137 A. 370), which was a case in which a petition had been filed to strike from the records of the court the report of the grand jury, the court in granting such motion stated in part as follows: " If there is sufficient evidence of the commission of a crime, it is the duty of the grand jury to indict, that is, to take such action as will bring the party to trial; if there is not, the citizens are and should be protected against accusations by that body which do not amount up to a criminal offense."

In *Matter of Grand Jury Report* (204 Wis. 409; 235 N. W. 789) the petitioner sought to have stricken from the files of the Municipal Court a report made by the grand jury making certain charges against him. The court in granting the motion said: " The controlling issue involved in this appeal is whether or not the grand jurors had the right to file the report in question with the court. The petitioner urges that the report should have been stricken out in its entirety or at least those portions thereof which he claims refer to him, the portions being specifically set out in the petition which he filed. This raises the question as to whether or not a grand jury has legal authority to file a report other than the report of progress and the returning of indictments. It is a fact that at various times courts have accepted such reports made by grand juries and this seems to have been done upon the theory presented and very ably discussed by the learned trial court in his opinion at the time of his decision upon petitioner's application. At times these reports have gone unchallenged. At other times they have been challenged and requests have been made to strike them from the files. When an issue has been joined the rulings of courts of last resort in the vast majority of instances have been to the effect that a grand jury has no authority to make a report criticising individuals either by name or by inference and that the grand jury's powers and authority are limited to those conferred upon it by law.

" While the statute does not in terms prohibit their extending their activities, that is impliedly commanded. If their investigation has disclosed nothing as a basis for accusing any one by indictment they should say so and depart."

In the case of *Bennett* v. *Kalamazoo Circuit Judge* (183 Mich. 200; 150 N. W. 141) a motion was made by the relator asking for a mandamus striking from the files of the Circuit Court a report presented to the court by the grand jury and which reflected upon him. The court in granting the motion said in part: " A review of all the cases cited on both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right to file such a report, unless it is followed by an indictment. The evils of the contrary practice must be apparent to all.

" Whether the matter contained in such report be true or false, it can make no difference with the principle involved. In either event the accused person is obliged to submit to the odium of a charge or charges based, perhaps upon insufficient evidence, or no evidence at all, without having the opportunity to meet his accusers and reply to their attacks. This situation is one which offends everyone's sense of fair play and is surely not conducive to the decent administration of justice."

In *Bennett* v. *Stockwell* (197 Mich. at p. 50; 169 N. W. 482) the plaintiff sued the defendants for libel. The defendants were grand jurors and it was claimed that they made a report to the court containing an alleged false, malicious and defamatory document. The court in deciding the question held that a report made by the grand jury to the Circuit Court reflecting upon the official conduct of the prosecuting attorney was not even qualifiedly privileged.

In *Poston* v. *Washington, A. & Mount Vernon Railway Co.* (36 App. Cas. D. C. 359), which was an action brought by the plaintiff against the defendant to recover damages for publication of a libel, a grand jury had made a report in writing to the court which the plaintiff claimed contained certain false and libelous statements concerning him, reflecting upon his credibility as a witness, and charging him in fact with the crime of perjury. The defendant had pleaded that the report was privileged. The court in denying the claim of privilege said: "A practice by grand juries of making reports upon the administration of public affairs, the condition of public works, and other matters of public interest, seems to have grown up in many States, authorized probably by statute. No statute of the State of Virginia has been cited as authorizing such practice. While such reports may, in some instances, tend to the advancement of the public welfare, yet, being extrajudicial, their

public character affords no protection to the grand jurors themselves, against action if they contain libelous matter."

In *Parsons* v. *Age-Herald Publishing Co.* (181 Ala. 439; 61 S. 345, 348) the action was brought against the defendant for libel and slander, based upon a grand jury report, which the plaintiff claimed was libelous and slanderous as to him. The defendant pleaded that such report was privileged. The court in denying the claim of privilege said in part: " They [grand juries] are neither required nor authorized by any statute to report the result of such investigations when they fail to find any impeachable fault or offense; and when they report and criticise any misconduct, real or fancied, of lesser grade, it cannot be for the purpose of invoking any judicial action, and is in fact no part of any judicial proceeding, actual or potential.

" Our conclusion is that that part of the grand jury's report dealing with the official conduct of the plaintiff was no part of any ' judicial proceeding ' within the rule of qualified privilege recognized by the common law in respect to the publication of such proceedings, and that it is not privileged as being the publication of a report required or authorized by law."

In *Rector* v. *Smith* (11 Iowa, 302), which was an action for libel based upon a report made by the grand jury charging the county judge of a county in that State with certain extravagances, the said judge brought an action for libel against the members of the grand jury and the defendant again set up as a defense that the report was privileged. The court in holding that such report was not privileged said: " The grand jury have no power, nor is it their privilege or duty to present any person for a criminal offense except by indictment.

"A report by a grand jury presents nothing upon which the court can act, unless it is in reference to the condition of the prison. The court can take no jurisdiction over the complaint charged by such report. Nor can a person thus presented have an opportunity to show himself innocent of the matters complained of."

In *Matter of Charge to Grand Jury* (3 Pittsb. 174, 179) the court says: " In the hands of competent, honest, and fearless jurors, the power is one of great value to the state, but its dishonest or incompetent exercise would make it a terrible engine of oppression and outrage."

Referring to the power of a grand jury to make a report when no indictment was found, in *Matter of Communication of Grand Jury (Lloyd and Carpenter)* (3 Penn. L. J. 47), " the grand jury presented a written communication to the court, in which they state that it had been charged before them by one of their members that two men had been guilty of certain offenses; and that to enable

them to perform their duty they required process to call before them such additional witnesses as they might deem necessary to examine into the subject, and requested the court to make the necessary order for the procurement of such witnesses and evidence as they might call for." The court in denying the request of the grand jury said: " While the power of presentment is conceded, we think no reflecting man would desire to see it extended a particle beyond the limit fixed to it by precedent and authority. It is a proceeding which denies the accused the benefit of a preliminary hearing; which in consequence of being instituted without a prosecutor, prevents him from demanding the endorsement of the name of the prosecutor on the indictment before he pleads, a right he possesses in every other case, and which takes away all of his remedies for malicious prosecution, no matter how unfounded the accusation on final hearing may prove to be. A system which certainly has in it nothing to recommend its extension."

In *Matter of Presentments of Grand Jury* (R. M. Charlt. [Ga.] 149) the court held that the presentment of a grand jury will, on motion founded on sufficient reasons, be expunged from the minutes.

The court has assumed both upon the hearing of this motion and in the rendering of this decision that the grand jurors in this proceeding were actuated by the best of motives in this investigation and in the carrying out of their oaths as they understood them and that the filing of their report was honestly done and in the belief that the same was for the public good and in the public interest. However, it would seem from the authorities cited in this decision that they exceeded the power conferred upon them by statute.

Whether or not grand juries should be permitted to make investigations such as here set forth and make a report of such investigation to the court, when in their judgment such investigation discloses matters inimical to the public good and interest, is a matter to be submitted to the sound judgment of the Legislature.

The petitioner's motion is granted.