**R. C. HULLUM, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 39563.**

Court of Criminal Appeals of Texas.

June 1, 1966.

On Rehearing Nov. 30, 1966.

On Second Rehearing March 8, 1967.

On Further Rehearing May 24, 1967.

————◆————

Frank Maloney, Tom Cowden, Austin (both on appeal only), for appellant.

Wallace Shropshire, County Atty., Donald H. Lane, Asst. County Atty., Austin, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

McDONALD, Presiding Judge.

The offense is theft by false pretext; the punishment, 30 days confinement in jail.

The evidence reveals that prior to April 15, 1965, appellant was employed as a deputy sheriff of Travis County, and that he resigned on that date and was thereafter employed by Central Investigation Agency, a corporation engaged in the business of making bail bonds and private investigations.

During the period from April 19 to April 22, 1965, two sons of the complaining witness, Mrs. J. E. Wimberley, were being held by the juvenile authorities of Travis County as the suspected perpetrators of certain burglaries. In response to overtures made by Larry Lane, an employee of appellant who visited Mrs. Wimberley at her home, she had agreed to consult appellant, who Mr. Lane said "could help the boys." The following morning appellant and his employee went to the home of the complaining witness and escorted her to appellant's office, where appellant and Mrs. Wimberley "talked about the boys," and appellant "said he could get them out," and also indicated he would keep the oldest boy from "going to Gatesville." A fee of $65.00 for appellant's services was agreed upon by these two parties, after which agreement appellant called the Juvenile Home. A brief telephone conversation ensued out of the hearing of Mrs. Wimberley, following which appellant instructed her to "Go pick the boys up," informing her that they were being probated to him. Mrs. Wimberley testified that "He told me to act like I was surprised that they were getting out." Mrs. Wimberley then went to the Juvenile Home, and her two sons were released from custody. She testified that although the juvenile authorities explained to her that the boys were released to her, she still thought "they were probated to him (appellant), too."

Mrs. Wimberley thereafter made two payments of $10.00 each to appellant, reducing her balance owed to $45.00, but having been persuaded by her sons that appellant had nothing to do with their being released, she refused to make further payment. As a result of this action, she received a letter, dated June 23, 1965, which was signed by an Austin attorney, and which stated:

"The Central Investigating Agency, Incorporated, has turned over your account to me for collection. On May 22, 1965 you incurred a bill for sixty-five dollars ($65) for services rendered by the agency. The balance due and owing is now forty-five dollars ($45). If this balance is not cleared up by June 30, 1965, I will

advise my client to bring suit against you in Small Claims Court."

Upon receipt of this letter, Mrs. Wimberley consulted the juvenile authorities, and an investigation was subsequently conducted of this matter, which led to the charge upon which appellant now stands convicted in this cause.

Mr. Jack Harrell testified, and appellant stipulated, that he was the juvenile authority with whom appellant had the telephone conversation mentioned above. He testified that he did not tell appellant the boys were to be released to him; that appellant's telephone call bore no influence upon the decision to release the boys, and that he informed appellant that it had already been determined that the boys were to be released in the custody of their mother.

A business card of R. C. Hullum, Jr. was introduced in evidence, the reverse side of which bore the notation: "5–1–65—Rec. from B. Wimberly—$10.00 on Bill (signed) R. C. Hullum, Jr." Mrs. Wimberley testified that this card was the receipt she received from appellant as evidence of the first $10.00 payment.

We find the evidence sufficient to sustain the conviction, and, in so finding, overrule appellant's contentions that the evidence fails to support findings that appellant obtained the money by a false pretext; that the complaining witness was induced by such false pretext to part with the money; or that appellant had the intent to defraud the complaining witness. The circumstances surrounding the transaction, and the representations made by appellant to the complainant as set out above in the summary of facts, are sufficient to raise the issue of theft by false pretext. The state's chief witness was the complainant. It is true that there was testimony tending to impeach her credibility, and that many of her answers were equivocal or uncertain. The jury nevertheless was authorized to believe that witness, and there was other evidence and testimony which corroborated

her story. The facts support a finding that appellant obtained $10.00 from the complainant upon the false pretext that he could and did aid in effecting the release of her sons from detention by the juvenile authorities.

Trial was conducted in the County Court at Law No. 2 of Travis County upon transfer of the cause from the 147th District Court of Travis County. Appellant attacks the jurisdiction of the county court, contending that there is no constitutional or statutory authorization for trial in a county court upon indictment, and that trial in county court can be initiated only upon an information or affidavit.

To support his contention that prosecution in county court upon an indictment is unconstitutional, appellant relies upon Article V, Section 17 of the Texas Constitution, Vernon's Ann.St., which provides in part that "prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law." He points out that, prior to 1925, Articles 448 and 449 of the Code of Criminal Procedure authorized prosecution in the county court upon indictment or information, but that these statutes were repealed by omission when the Code of Criminal Procedure, 1925, was enacted. He cites Ethridge v. State, 76 Tex.Cr.R. 41, 172 S.W. 784, wherein it was stated that an information "shall be filed" as a prerequisite to trial in the county court. He concludes that since the repeal by omission of Articles 448 and 449, supra, the requirement of prosecution by information in misdemeanor cases in county courts is mandatory.

We find no cases in point. It would appear that a similar contention was summarily overruled in Quarles v. State, Tex. Cr.App., 385 S.W.2d 395, however a review of that record reveals that the issue there involved was sufficiency of the transfer, and whether the document upon which that appellant was prosecuted was an indictment or an information.

The traditionally preferred form of accusatory pleading is the indictment returned by a grand jury, for the reason that such a procedure provides "a means of protection to the citizen against the dangers of a false accusation, or the still greater peril of a sacrifice to public clamor." In re Wilcox, 153 Misc. 761, 276 N.Y.S. 117, 121; see the Interpretative Commentary to Article I, Section 10 found at 1 Vernon's Ann.Tex.Const. pp. 267, 271. Certainly an accusation based upon the investigation and collective conclusion of twelve unbiased citizens provides greater insurance against mistaken or malicious prosecution than does prosecution upon information filed upon the oath of one person. For this reason, pleading by indictment is a requisite to prosecution for the more serious crimes in the federal courts, Fifth Amendment, Constitution of the United States; in the courts of this state, Article I, Section 10, Constitution of the State of Texas, and in almost all other jurisdictions in the United States, 42 C.J.S. Indictments and Informations § 9, p. 838. As a matter of practicability, such protection has not been extended to misdemeanants.

Article V, Section 17 of the Texas Constitution provides in part:

"Prosecutions may be commenced in said court by informat'on filed by the county attorney, or by affidavit, as may be provided by law. Grand juries empanneled in the District Courts shall enquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial; * *"

From this provision, it can be seen that prosecutions in the county court *may be* commenced on information, or, in some cases, by affidavit. The grand jury is nevertheless authorized to return indictments for misdemeanor offenses. It would necessitate a tortured construction of the law to conclude that such a constitutionally-authorized indictment, when transferred, as

provided, to a court having jurisdiction of the offense, would not be sufficient as an accusatory pleading, while an information charging that offense would be satisfactory. We do not interpret the law in this manner. We agree with appellant "that the county court cannot acquire jurisdiction or try a misdemeanor where it *originated* in the county court until an information has been filed," Davis v. State, 150 Tex.Cr.R. 463, 202 S.W.2d 943, but we conclude that trial in the county court upon a properly transferred indictment does not violate an accused's constitutional rights.

This interpretation is supported by the additional language in Article V, Section 17, providing that "if such indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit." This must be interpreted to mean that where an indictment has been returned and transferred to a county court, prosecution will be based on that indictment unless it is quashed.

The authorities cited by appellant support the proposition that one accused of a misdemeanor is entitled to *at least* a written accusatory pleading in the form of an information. They do not support the conclusion that trial in the county court upon a properly transferred indictment violates the Constitution.

For the first time in his motion for new trial, appellant also contends that the trial court lacked jurisdiction over this cause because the indictment was not transferred in accordance with law. No plea to the jurisdiction was filed, and appellant's motion to quash the indictment did not challenge the order of transfer. Because formal objection was not timely made, appellant's objection that there is no record that the indictment was ever presented by a grand jury or received by the district court cannot be considered. Williams v. State, 167 Tex.Cr.R. 503, 321 S.W.2d 72;

Poe v. State, 98 Tex.Cr.R. 177, 266 S.W. 417; Adams v. State, 93 Tex.Cr.R. 249, 246 S.W. 661.

At the hearing on appellant's motion for new trial, these facts were adduced. The order for transfer, when signed by the district judge, directed that the cause be transferred to "the County Court at Law of Travis County." The county clerk's office refused to file this order and returned it to the district clerk because the order failed to specify whether the cause was transferred to the County Court at Law No. 1 or the County Court at Law No. 2. The *deputy district clerk, without authority of the district judge, inserted "No. 2" immediately after the words, "County Court at Law."*

Appellant contends that this altered order is, in effect, no transfer order at all, and without an order of transfer, the County Court did not acquire jurisdiction. He argues that even if other defects in the transfer cannot be raised on appeal because of his failure to preserve error, he cannot be said to waive that which he did not know, and *that this defect, not apparent on the face of the order,* and not discovered until the hearing on his motion for new trial, is before this Court for review. We find no substantial defect in the order. A reading of Chapter 69, Section 6 of the General and Special Laws of the 59th Legislature shows that even if the district judge had designated to which of the two courts the cause was transferred, such designation would have been ineffective, inasmuch as the cause, notwithstanding such designation, could have been tried in either court, by either judge, in either courtroom. The order as signed by the district judge was in substantial compliance with Article 419, Code of Criminal Procedure, 1925, then in effect. Dittforth v. State, 46 Tex.Cr.R. 424, 80 S.W. 628; Johnson v. State, 28 Tex.App. 562, 13 S.W. 1005.

By formal bill of exception, appellant contends that his conviction of theft by false pretext upon a general theft indictment is a deprivation of constitutional rights granted by Article 1, Section 10 of the Constitution of the State of Texas, and the Sixth and Fourteenth Amendments of the Constitution of the United States, because such pleading constitutes a denial of his right to be apprised of the nature and cause of the accusation against him, and that his motion to quash the indictment should have therefore been granted. This Court overruled this identical contention in Cameron v. State, opinion delivered February 23, 1966, Tex.Cr.App., 401 S.W.2d 809. We here adhere to our holding therein stated and find no merit in appellant's formal bill.

Appellant urges that there was a fatal variance between the proof and the allegations in the indictment that the money was the corporeal personal property of Mrs. J. E. Wimberley, and that it was taken from the possession of Mrs. Wimberley. He contends that the record shows that Mrs. Wimberley was a married woman; that there is no evidence in the record to show that the money was her separate property; and that where the evidence fails to show that the property is the separate property of the wife, under the circumstances here involved, ownership must be alleged in the husband.

The record discloses no relationship or contact between appellant and Mr. Wimberley. The evidence shows that from the initial solicitation until the indictment of appellant, appellant and Mrs. Wimberley were the principal parties to this transaction. She was the one attempting to secure the release of her sons; she was contacted by appellant's employee; she negotiated to have appellant effect their release; she was the person induced to pay appellant for the services he allegedly had performed; it was her name in which the account was carried on the business records of the investigating organization; it was Mrs. Wimberley who paid the money to appellant and to whom he gave a receipt for that money; and it was to Mrs. Wimberley that the

threatening letter was sent when she refused to pay more money.

It is the obvious deduction that the money was taken from the possession of Mrs. Wimberley.

Article 402, Code of Criminal Procedure. 1925, now Article 21.08, Vernon's Ann.C. C.P., states, in part:

"Where one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either."

The primary purpose of the indictment being to apprise the accused of the nature of the charges against him, appellant cannot complain that ownership was alleged in the person from whom he obtained the money he was alleged to have stolen, and with whom he had dealt throughout the transaction upon which the charge was based.

Appellant's many other formal and informal bills of exception have been considered. We find no reversible error presented by any of them.

The judgment is affirmed.

## OPINION
## ON STATE'S MOTION FOR
## REHEARING

MORRISON, Presiding Judge.

Our opinion on appellant's motion for rehearing is withdrawn. In addition to what we said originally, we call attention to the following cases: Lenzen v. State, 112 Tex.Cr.R. 297, 16 S.W.2d 234; Horton v. State, Tex.Cr.App., 20 S.W.2d 1110; Smith v. State, Tex.Cr.App., 115 S.W.2d 685; Litchfield v. State, 147 Tex.Cr.R. 201, 179 S.W.2d 507; Bell v. State, 170 Tex.Cr. R. 508, 342 S.W.2d 444; and Newsom v. State, Tex.Cr.App., 372 S.W.2d 681.

Each of the above cases is authority for the rule that any complaint of irregularity in the transfer of a case from the court where it was filed to the county court where it was tried should have been entered before announcing for trial. We find no complaint as to the order of transfer until the motion for new trial, and hence the rule announced by the cases cited is applicable to the case at bar and is controlling.

We noted in our original opinion that there was testimony tending to impeach the complainant and that many of her answers were equivocal or uncertain, but held the evidence sufficient to sustain a finding that appellant obtained $10.00 from the complainant upon his false representation that he could get her boys out of the Juvenile Home.

Attached to appellant's motion for rehearing is an affidavit of the complainant shown to have been made a few days after our original opinion affirming this conviction, which we deem sufficient, if true, to present the question of whether the conviction was obtained by the use of false evidence, known to be false by the police officer named in said affidavit. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Curran v. State of Delaware, 259 F.2d 707 (3d Cir.) cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353; Jones v. Com. of Kentucky, 97 F.2d 335 (6th Cir.).

A federal claim of denial of due process of law having been presented, we have decided that a hearing should be held in the trial court while the appeal is pending and that the federal claim of denial of due process be determined prior to the final disposition of said appeal. Such procedure is consistent with the 1965 Code and Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

We suspend further consideration of appellant's motion for rehearing for 90 days and direct that such hearing be had and that the evidence adduced, together with the trial court's findings, be forwarded to this Court within such 90 days.

## SECOND OPINION
## ON STATE'S MOTION FOR
## REHEARING

MORRISON, Judge.

Pursuant to the mandate contained in our opinion dated November 30, 1966, the Honorable David S. McAngus, as Judge of the County Court at Law No. 2, held a hearing on five days in December, and has forwarded to this Court in due time, three volumes consisting of 599 pages of testimony taken at such hearing together with his finding of fact based upon such hearing. We have examined the record with care and conclude that it supports the Judge's finding and that this appellant has not been denied due process and that his conviction was not obtained by the use of false evidence known to be false by the police officer named in the affidavit mentioned in our prior opinion.

This claim now having been settled, the State's motion for rehearing is granted and the judgment is affirmed.

It is so ordered.

## OPINION
## ON APPELLANT'S SECOND
## MOTION FOR REHEARING

BELCHER, Judge.

This case was assigned, on appellant's motion for rehearing, to the writer as a Commissioner for consideration and recommendation of its disposition. After studying the record I prepared an opinion in which it was recommended that the case be reversed and remanded. This opinion was approved by the court and delivered October 12, 1966, but was thereafter withdrawn in the opinion on the State's Motion for Rehearing delivered November 30, 1966.

On January 1, 1967, I became a constitutional member of this court.

The former opinion delivered October 12, 1966, reversing and remanding this case reads as follows:

"The trial was had on October 18, 1965, in the County Court at Law No. 2 of Travis County, on an indictment returned and filed in the 147th District Court of Travis County, Texas, charging the appellant with the offense of misdemeanor theft of ten dollars in money.

"Appellant contends that the trial court lacked jurisdiction over this cause on the ground that the indictment was not transferred to it from the 147th District Court in accordance with law.

"This contention was first raised in the motion for a new trial. At the hearing on the motion these facts were adduced. The order for transfer, when signed by the district judge, directed that the cause be transferred to 'the County Court at Law of Travis County.' The county clerk's office did not file this order but returned it to the district clerk because the order failed to specify whether the cause was transferred to the County Court at Law No. 1 or County Court at Law No. 2 of Travis County, these being the only County Courts at Law of Travis County. The deputy district clerk, without the authority and knowledge of the district judge, inserted 'No. 2' immediately after the words, 'County Court at Law,' in the order, and returned it to the county clerk.

"Art. 5, Sec. 17, Tex.Const., in part reads as follows:

" 'Grand juries empanneled in the District Courts shall enquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the *County Court or other inferior courts*, having jurisdiction to try them for trial.' "

"Art. 419, C.C.P., provides:

" 'Upon the filing of an indictment in the district court which charges an offense over which such court has no jurisdic-

tion, *the judge of such court shall make an order* transferring the same to such inferior court as may have jurisdiction, *stating in such order* the cause transferred and *to what court transferred.'"* (Now Art. 21.26, C.C.P.)

"Both County Courts at Law Nos. 1 and 2 of Travis County have jurisdiction in misdemeanor theft cases. Art. 1970–324 and 324a, R.C.S.

"Included in the inferior courts referred to in the above provisions of the constitution and the statute are the county court, county courts at law, justice courts and corporation courts.

" 'County courts have original jurisdiction in misdemeanor cases when the fine to be imposed exceeds $200, except where jurisdiction has been conferred on district courts or criminal district courts.

" 'Justices' courts have original jurisdiction where the punishment may be by fine not in excess of $200, except where the offense involves official misconduct. * * *

" 'The corporation court and the justice of the peace have concurrent jurisdiction in cases arising under criminal laws, committed within the corporate limits, if the maximum fine is $200.

" 'The jurisdiction of justices' courts over cases in which the fine may not exceed $200 is not exclusive; county courts have original concurrent jurisdiction with justices' courts of misdemeanors cognizable in the latter courts, except where it has been otherwise provided, as in cases of misdemeanors involving official misconduct.

" 'The amendment of the Penal Code provision providing that the theft of property of the value of $5 or less is to be punished by a fine not exceeding $200 has been held not to deprive the county court of concurrent jurisdiction with the justice's court.

" 'County courts at law and courts known as county courts at law No. 2 have been established in some counties and invested with original criminal jurisdiction. County courts of some counties have been divested of their criminal jurisdiction and such jurisdiction has been conferred on county courts at law.'" 16 Tex.Jur.2d 348, Sec. 193, and 341, Sec. 186.

■ "The judge of the district court in which an indictment is returned charging a misdemeanor offense over which such court has no jurisdiction has the duty of deciding the court or courts having jurisdiction of the offense charged, and the judge alone has the duty of deciding to what court he will transfer the cause, as the statute directs that *'the judge * * * shall make an order transferring the same * * * stating in such order * * * to what court transferred.'*

■ "The numerous misdemeanor offenses and the wide range of courts which may have jurisdiction of them impose the duty upon the judge of the court in which the misdemeanor indictment was returned of deciding to which one of said courts he will transfer the case. Concurrent jurisdiction for the same misdemeanor offense charged in an indictment may be in a county court, one of several county courts at law, a justice court, or a corporation court.

"The insertion by interlineation of 'No. 2' following 'County Court at Law' in the order previously signed by the judge was unauthorized. Although the order of transfer relied on is regular on its face, the evidence adduced on the motion for new trial and as certified in a formal bill of exception shows that such order is not the order as signed by the judge, and that the interlineation was made without the judge's knowledge. The deputy district clerk had no power to materially change the order of transfer and make it express something that the judge had not pronounced.

"The transfer of this case was authorized only by virtue of the power and authority conferred by the provisions of the constitution and the statute mentioned. This being true, it inevitably follows that under the statute, the transfer of this case to an inferior court having jurisdiction to try it was alone at the option and within the exercise of the right given the district judge to decide to what court the cause would be transferred.

"47 Tex.Jur.2d 149, Sec. 114, reads as follows:

" 'It is a general rule that public duties must be performed and governmental powers exercised by the officer or body designated by law; they cannot be delegated to others. This is particularly true of duties that are judicial in their nature, or that call for the exercise of reason or discretion.' "

■ "From the record, it is concluded that the order relied on in transferring this case to the County Court at Law No. 2 of Travis County was void. The unauthorized alteration of the order made in contravention of the statute was one of substance and constitutes error that may be raised for the first time after verdict."

We were in error in withdrawing the foregoing opinion granting appellant's motion for rehearing, and in applying the rule that any complaint of irregularity in the transfer of the case from the district court to County Court at Law No. 2 should have been raised prior to trial. It is apparent from the record that neither appellant nor his counsel was aware of the fact that the district judge had not authorized the insertion in his order transferring the case to the County Court at Law "No. 2" so as to make it appear to be his order transferring the case to County Court at Law No. 2 of Travis County where the case was tried, until the hearing on their motion for new trial. The state does not contend otherwise.

■ We further observe that we were in error in concluding that the equivocal, uncertain and conflicting testimony of the complainant as to representations made by appellant prior to the release of her sons from Gardner House and the undisputed fact that she voluntarily paid appellant $10 several days after the boys had been released and she had been told by the juvenile officer that they were being probated to her, was sufficient to sustain a finding that appellant obtained the $10 from the complainant "upon his false representation that he could get her boys out of the juvenile home." She knew that the boys were out when she paid appellant the $10.

The affidavit, signed statement and oral statements attributed to complainant, as well as her testimony at the trial and at the hearing on appellant's claim of denial of due process, convince us of the correctness of her statement that she was not sure just what R. C. Hullum told her.

For the reasons stated, appellant's second motion for rehearing is granted and the judgment is now reversed and the cause remanded.

MORRISON, Judge (dissenting).

This Court has had this case under submission for more than a year, and five opinions have been written prior to the one we hand down today. One of the grounds for reversal set forth in the majority opinion is that complainant's testimony was "equivocal, uncertain and conflicting." In this connection I point out that prior to this opinion this Court found no difficulty in understanding complainant's testimony.

A jury has heard the complainant testify, and they believed her testimony. Judge McAngus has heard her testify twice and has certified to this Court that she "testified truthfully on the main trial."

I find myself in agreement with Mr. Justice Reed of the Supreme Court of the United States when he said in Stoll v.

Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104, 109, "It is just as important that there should be a place to end as that there should be a place to begin litigation." In the case at bar, in my judgment, the "place to end" has long since passed.

I respectfully dissent to the granting of appellant's second motion for rehearing.